WRIGHT, J.,
delivered the opinion of the Court.
It is not denied that James T. Mills, though of weak intellect, was competent to make the deed, dated the 18th of March, 1856, to Peter A. Wilkinson ; and that the same was, in all respects, proper, and such a deed as he should have made. Neither is it controverted that the action of the county court, in afterwards attempting to vacate this deed, was without authority and void, and that the same remains in full force. A question is made as to the construction of this deed, and upon this, we are of opinion, looking to the entire instrument, that Peter A. Wilkinson, by its terms, became invested with the share of James T. Mills in the estate of his grandfather, John Mills, consisting of a I200..00 legacy under his will, $1000.00 agreed to be paid him in the compromise of the contested will suit in the circuit court of Sumner county, upon his grandfather’s will, and any other interest he might have in that estate, in trust: 1st — to pay the attorneys’ fees of the said James T. Mills, in the suit aforesaid, and any other debts he then owed, unless otherwise paid; secondly — to hold the residue of said fund for the support of the said James T., and his family, during his natural life, with remainder, at his death, to his children, the share of any deceased child to go to its children. The trustee has power to vest the fund in a tract of land or slaves, and again to sell and re-invest, or loan the proceeds at interest, to the same uses and trusts as the original fund. He may permit the said James T. and family, to remain in possession of the property so purchased, or not, at his discretion, and shall apply the interest on the money, or the issues and profits of the land, or the hire of the slaves, as the case may be, to their support during the natural life of the said James T. ; but he is prohibited from applying the interest or money, *708 the issues and profits of land, or the hires of slaves to the payment of any debt, or contract made by the said James T., after that date, unless it be for the necessary support of himself or his -wife and children; and the body of the fund itself, or the property purchased therewith, cannot 'be applied to the payment of any debts, or engagements of the said James T., made after the execution of said deed, unless they be authorized to be contracted by the trustee, and be also for the necessary support of the said James T.
This, we think, is the true meaning of the deed. His purpose, to use his own language, was to secure the fund against being spent either by himself or others.
The result is, that the body of the fund, or property itself, cannot be applied to any debt of the said James T., contracted after the making of the deed, being satisfied as we are, that the trustee never, at any time, gave his sanction to any of said debts. Neither can the interest, rents, or hires be applied to any such debts, unless shown to have been for the necessary support of £he said James T., or his wife and children.
It follows, also, that the deed subsequently, and on the 9th of January, 1857, made of this same fund, by James T. Mills to Haley S. Young, was inoperative and void, as against the previous conveyance made by him to Wilkinson, in trust for his wife and children ; and the more especially so, as the said Young had notice of the prior deed.
As to interest on the $200.00 legacy, neither the will or the compromise are filed, and there is nothing to show its exact nature. We must take it, therefore, to be a legacy given generally out of the personal estate, without the specification of any time of payment by the testator, in which case the rule is that it shall carry interest only from the expiration of the year next after his decease; the executor being necessarily allowed that time for the collecting of the effects. Interest on a specific legacy, where it produces interest, shall be computed from the time of the testator’s *709 death. It is severed from the rest of his estate, and specifically appropriated for the benefit of the legatee, and shall, therefore, carry interest immediately. There are other cases where a legacy, without any time of payment mentioned, charged on lands yielding immediate profits, or given out of a personal estate carrying interest or producing dividends, has been allowed to carry interest from the death of the testator. But, as before remarked, we have nothing to bring this legacy within these favored rules. Martin on Executors, 211, 212; Toller, 323; 1 McCord’s Ch. R., 94, 99, 148, 152. Neither does the circumstance of his being a grandchild, as would be the case if he were a child, as it seems, change the rule. Martin, 214; 3 Ves. Jr., 12; 2 Johns. Ch. R., 628.
We also think the $1000.00, due under the compromise, should carry interest from its date. It is admitted to be a debt at that time, and, as á legal consequence, bears interest, unless there be something in the terms of the contract to prevent it; and if this be so, it should have been shown by those who resist the interest. This is not done.
In the settlement of the share of James T. Mills in the estate of his grandfather, with the trustee, under the deed of the 18th of March, 1856, the administrators of John Mills should be allowed credit for the payment of any debts properly chargeable upon the trust fund; but not for payments made to James T. Mills himself, unless shown to have been legally applied in exoneration of the trust estate. In like manner, so far as H. S. Young may have contributed to discharge any such debts, he will be substituted to the shoes of the respective creditors, as against the trust fund.
The interest shall be computed according to the rule in the case of partial payments, so that the payment shall be first applied in discharge of the interest, and the balance in discharge of the principal, where it is allowable to “‘encroach upon the latter. 1 Meigs’ Dig., 623-4.
The attorneys’ fees and debts against James T. Mills at the execution of the deed of trust, should come first out of *710 the interest of tbe trust fund, and then from the principal; and the net balance will constitute the body of the fund, not to be diminished, and out of the interest of which the debt for the necessary support of the family of James T. Mills must be paid.
So far as H. S. Young may not be re-imbursed, for money paid by him to James T. Mills, or Martha A. Bober-son, upon the purchase of the 9th of January, 1857, either out of the trust fund, or by re-payment to him by her, we are of opinion they are jointly liable to Mm. It appears that, notwithstanding James T. Mills had parted with all title to the claim of the $1000.00 by the deed to Wilkinson, he sold it to Young for $800.00, $47.70 of which he paid in a debt he beld on said James T. ; $252.30 of it in costs, and for the residue, he gave his two notes of $250.00 each, due, one the first of July, 1857, and the other, the first of March, 1858, which tbe said James T. immediately endorsed and delivered to his mother, the said Martha A., with power to turn the same into money, and relieve herself from a liability as his stayor, in a debt of about $80.00. She was also anxious to get possession of the notes and the money upon them, lest they might be wasted through the improvidence of her son ; believing, as she did, that the decree of the county court had annulled the deed to Wilkinson.
James T. Mills, when he sold Young the claim of $1000.00, had given him a guarantee it would be collected and realized by him. This he doubted, because of the previous deed to Wilkinson, having fears as to the power of the county court to annul it. To induce him at once, before the notes matured, to pay her, she agreed to, and did, receive of him $325.00, and surrendered to him the notes, giving him at the same time her guarantee that he should realize from the claim so sold lnm by James T. Mills, the sum of $920.00. We are unable to see that she did not become bound upon this guarantee.
The case is not affected by the statute of frauds and *711 perjuries, and the promise need not be in writing. Where the promise to pay the debt of another — if this were a case of that sort — arises out of some new and original consideration of benefit, or harm, moving between the newiy contracting parties, it is not a case within the statute. Myers v. Morse, 15 Johns. R., 425; Roberts on Frauds, 232 to 239. Williams v. Leper, 3 Bur. 1886. Here, Young was not bound to pay these notes, the consideration having entirely failed, by means of the superior title of Wilkinson, the trustee. He had a perfect legal right to withhold the money, which was as much his own as if tlie trade had never been made, or the notes given. He is induced to yield this right in consideration of the «guarantee. It is in principle like Williams v. Leper, where a broker, about to sell the goods of an insolvent, promises the landlord to pay him his rent, if he will not distrain, this promise need not be- in writing. But if this were not so, the want of a writing is obviated by her having stated in an answer in chancery that she had given the guarantee, and in which she, in effect, insisted the same was valid and binding on her. This answer was to a bill filed by a creditor of James T. Mills, to reach this fund in her hands, and her defence was her superior obligation to Young, upon her guarantee, his title to the claim purchased of James T. Mills, having failed. Roberts on Erauds, 239. It will be seen the guarantee extended beyond the $325.00, and as to a consideration, if there were nothing else, it was certainly a detriment, or loss to Young to give up the legal right to hold the money. 24 Pick., 221.
We do not consider whether he would have a right, upon the gurantee, to go beyond the sum actually paid, because in his bill, he is content with that; and such a decree obviously comports with the equity of the case.
Though the attitude of Young is not such as to commend him very strongly to a court of equity, yet we see nothing in his conduct to repel him altogether. Though he knew of the previous deed to Wilkinson, yet he believed, as did *712 James T. Mills and his mother, that it had been annulled by the decree of the county court; and she urged him to make the purchase, in the hope of saving her son from the hands of others more grasping. He does not appear to have been guilty of actual fraud; and though he took the claim at a ruinous discount, yet the purchase was not usurious ; and we know of no rule of equity or policy which will repel him, in such a case, from relief in a court of justice, if his title to the claim fail.
We cannot assume that he was an unlicensed broker, dealing in claims as a business ; because if a single transaction would fix upon him the character — and we have no evidence of a.ny but the one — yet the record being silent as to whether he had license or not,, we cannot say he had not; but rather that his acts were consistent with — than against the law.
As to the claim of $47.70 — originally a debt in favor of Young, against James T. Mills — Mary A. Roberson will not be charged with that.
The decree of the Chancellor will be reversed, and the report of the commissioners set aside, and a decree pronounced and an account stated upon the principles of this opinion.